3:19 gp 2 (VAB)

ORDER 434447

DOCKET NO: HHDCV156075511S

SUPERIOR COURT

CORONA, MEGAN Et Al
   V.
DAY KIMBALL HEALTHCARE, INC. Et Al

JUDICIAL DISTRICT OF HARTFORD
  AT HARTFORD

10/17/2018

ORDER

ORDER REGARDING:
10/04/2018 346.00 MOTION FOR ORDER

The foregoing, having been considered by the Court, is hereby:

ORDER: GRANTED

Short Calendar Results Automated Mailing (SCRAM) Notice was sent on the underlying motion.

434447

Judge: THOMAS G MOUKAWSHER
Processed by: Adam Harvey



FILED
2019 JAN 15 P 4:16
U.S. DISTRICT COURT
NEW HAVEN, CT.


FILED

SEP 2 0 2018

HARTFORD J.D.

| DOCKET NO.: X07-HHD-CV-15-6075511-S | : | SUPERIOR COURT |
|---|---|---|
| | : | |
| | : | JUDICIAL DISTRICT OF |
| MEAGAN CORONA | : | HARTFORD |
| | : | |
| v. | : | COMPLEX LITIGATION |
| | : | |
| DAY KIMBALL HEALTHCARE, INC. | : | SEPTEMBER 20, 2018 |

## Memorandum of Decision

For the courts to guarantee the triumph of the law over the loud, there must be civility in court proceedings. Vital to this victory is the lawyer—the official our Rules of Professional Conduct hail as both "an officer of the legal system" and "a public citizen having special responsibility for the quality of justice."

The court must take up the matter before it today because judges have a critical role in seeing that lawyers uphold these special responsibilities. Indeed, for matters relating to courtroom conduct, judges have primary jurisdiction over lawyers who do not meet their obligations as officers of the court.[1] So it is this court's unpleasant duty to take up the question of the conduct of one of these public officers as she faces the potential for a seventh sanction from this court: Attorney Madonna Sacco.

As it is sometimes with others, it may be the case with Attorney Sacco that a single comment can sum up a career. The comment at issue here— made by Attorney

**COPY CERTIFIED**

---

[1] Practice Book § 2-45.

OCT 22 2018
JUDICIAL DISTRICT OF
HARTFORD
STATE OF CONNECTICUT

Decision mailed on 9/20/18 to:
Madonna Sacco, Esq.
Eugene A. Cooney, Esq.

Office of Chief Disciplinary Counsel
Reporter of Judicial Decisions
Counsel of record notified by SCRAM notic

Sacco after some thirty years of practice— is as revealing as it is unacceptable.   In the midst of a dispute during a deposition given before the court, a forgotten lapel microphone picked up Attorney Sacco explaining her courtroom strategy to an associate: "Fuck him," she said—referring either to opposing counsel or the court itself— "I am going to give him such a fucking hard time."

Attorney Sacco hasn't denied she said these words and the flash drive provided to the court confirmed she did say them.  Instead, through her lawyer, she claimed this is just ordinary lawyer talk, reflecting what many professionals think or say when no third party is listening.  Opposing counsel in this litigation, Attorney Angelo Ziotas, did not agree.  He moved for sanctions for the conduct this declaration announced and he and his co-counsel disputed on the record the claim that this reflected the mores or the mouths of members of the Connecticut bar.  To protect not merely the parties but the system itself, this court separately and on its own authority ordered Attorney Sacco to show cause why she shouldn't be sanctioned for her deposition conduct.

This doesn't mean this opinion is about punishing members of the bar for their private use of this mindlessly overused profanity.  But when wicked words betoken wicked deeds they are a matter for action. Here, those words reflect what Attorney Sacco was doing and would continue to do: willfully disrupt a proceeding in court.

Indeed, they reflect what Attorney Sacco appears to have done and has been sanctioned for six times for over a nearly 20-year period.

The record of the court's proceedings confirms that Attorney Sacco meant what Attorney Sacco said. This court's involvement began with the ring of a telephone at a time when Attorney Sacco and her history were entirely unknown to this court. To its surprise, a particularly contentious dispute had erupted during a deposition over not very much and the parties called the court. The parties were so split and insistent during the conference call that instead of resolving the dispute on the telephone the court ordered the parties to come to court and argue the matter.

They did so on October 31, 2017. And it didn't go well. After having shown up late for the hearing, Attorney Sacco repeatedly interrupted the court and disputed petty things like whose copy of the deposition transcript the court should read. Attorney Sacco rigidly insisted that it was perfectly proper for an expert witness at a deposition to refuse to consider hypothetical questions. She bluntly insisted that the court had no authority to decide whether a witness had fairly answered a question. Then she set to squabbling in front of the court over the facial expressions of her opposing counsel. Not long after she lectured the court on what she perceived as wrong about its use of the word "nonsense" to describe the expert physician's refusal to recognize the difference between a factual and a hypothetical question, belligerently

3

interrupting the court and earning her first warning from the court to correct her behavior. Finally silent, Sacco turned to physical antics, with her hands on her hips striking a defiant pose, head down shaking her head at length displaying disgusted disagreement while the court spoke. This earned her a second admonition to stop and "stand there like a professional." Instead of complying and apologizing, she snapped "I am a professional from beginning to end."

Undercutting this assertion, Attorney Sacco then misrepresented the deposition record to the court, stating that the witness had not refused a hypothetical but merely had resisted assumptions because an opinion could not be derived from "that fact alone." As the court tried to get her to find this assertion in the transcript, Attorney Sacco turned on the court, accusing it of not being "interested in hearing my response." After a lengthy attempt to bicker with the court and divert it away from the topic, it was revealed that the transcript showed Attorney Sacco had made up the testimony she relied on.

And so the hearing went. Attorney Sacco bizarrely maintained that a hypothetical can't be asked unless it relies on the actual facts of the case. She continued to interrupt the court and when the court said it disagreed and tried to explain she interrupted and peremptorily said "then rule your honor." The court gave a third warning that it disapproved of the attitude Attorney Sacco displayed.

4

Nonetheless, Attorney Sacco went on to declare "we're not here to rule as the court has done" and that "the court cannot determine whether or not an answer is adequate or not based upon the transcript and based upon the court's lack of knowledge of the case."

When the court said the rest of the deposition would be in court she said "I don't even understand that" and went on to lash out at the court for insulting her, including when the court admonished her that her behavior reflected a misunderstanding of her professional duties.  In a fourth admonition, she was warned to stop interrupting the court and the deposition ended with a fifth admonition that the court might have to take other action if her behavior continued.

On November 29, 2017, in the wake of this unhappy introduction, plaintiffs' counsel resumed in court the expert deposition of Attorney Sacco's then client, the defendant Dr. Erika J. Kesselman.  Rather than wipe the slate clean, Attorney Sacco renewed her complaints from the last time and refused to sit down; she lectured opposing counsel on the position of his microphone and demanded to sit in the witness box next to the witness while refusing to accept the court's ruling that she could not, bickering and sniping at the court instead.

Instructed to follow the rules and confine non-privilege objections to merely "objection to form," Attorney Sacco interrupted virtually every exchange with

objections that made clear that many—if not most—were baseless, especially since some of her objections were stated either before a question was asked or even when opposing counsel made a statement rather than asked a question.  The court had to warn Attorney Sacco to at least hold her objections until a question was asked.

Attorney Sacco asserted a privilege objection to the yes or no question of whether the witness had ever heard of the phrase "standard of care" before.  When the privilege objection was overruled, Sacco refused to accept the court's ruling, demanding the transcript be read back, interrupting the court, and rudely disputing its right to rule on the privilege objection in the manner set out in Practice Book § 5-5.

Carrying on her refusal to cooperate, Attorney Sacco refused to sit down when asked to do so and even when ultimately she was ordered to do so. Despite the court's repeated orders, Attorney Sacco remained standing and insisted that since counsel asking the question was standing she could stand too. She continued to berate and argue with the court over the issue even after being given her sixth admonition and being specifically threatened with a finding of contempt.

To the extent the deposition was allowed to have any substance, it revolved around Kesselman's stubborn refusal to answer simple hypothetical questions, to say when last she read a medical treatise, to recognize the phrase "standard of care" and the like.  Having listened to this hedgehog refusal to engage in even the most ordinary

6

exchange of questions and answers, the court infers this didn't reflect the attitude of the witness alone but her coaching by her counsel.  Kesselman gave every appearance of being extremely uncomfortable and greatly distressed while giving her non answers and engaged in a revealing exchange that the court repeatedly had warned Attorney Sacco against. An objection to form with the added hint of "what records?" from Attorney Sacco yielded a parrot like response that "it would depend on the records" from the witness.  Attorney Sacco was warned for at least the seventh time in consequence.

As the deposition limped along, the court responded to Attorney Sacco's opposing counsel's claim of obstruction by noting that the court did not expect counsel merely to keep asking the unanswered questions indefinitely.  The court explained that the rules allowed him to seek other remedies, including the sanction of negative inferences. Attorney Sacco then snapped that she was intimately familiar with the rules and asserted that the court had no such power.  The deposition proved a waste of the court and the parties' time. It ended with opposing counsel's decision to resolve the matter with a motion for sanctions.  The motion filed led the court, after more buffeting, to where it is today.

The plaintiffs' motion for sanctions was filed.  It included the tape catching the Attorney Sacco statements from the lapel microphone.  With at least the virtue of

consistency, Attorney Sacco then struck back with unreasonable belligerence, without any basis in the rules, moving to strike the entire motion from the docket and demanding that the court refer Attorney Ziotas to the grievance committee while simultaneously demanding the court's recusal—a motion this court referred to the district's administrative judge.

After a full hearing and briefing, Judge David Sheridan denied Attorney Sacco's motion directed against the court. After this, Attorney Sacco was discharged by her client, substitute counsel withdrew the motion against Attorney Ziotas, and this court ordered Attorney Sacco, who ultimately appeared with her own lawyer, to show cause why she should not be sanctioned for her conduct before the court.

At the hearing on the motion, Attorney Sacco's lawyer claimed the court couldn't consider Attorney Sacco's remark because it did not appear on the official transcript and was attorney work product. But this is wrong on both counts. First, the remark is important because this is an attorney revealing an intention to disrupt a court proceeding. It wouldn't matter where she announced the plan. The plan is the wrong, not the place. Attorney Sacco is not being scrutinized for using improper language on the record.

Second, the work product doctrine doesn't bar the court from considering the remark. As the Supreme Court held in 2003 in *Harp v. King*, work product is only

8

protected when an adequate effort is made to keep it confidential.[2]  An attorney must

at least be expected to be aware when a live microphone is attached to her in court.

The microphones can be muted and a reasonable attorney would take some safeguards

to prevent inadvertent disclosure of work product by muting the microphone when

conferring with an associate.  Attorney Sacco claims thirty years of intimate knowledge

of the courtroom and medical malpractice depositions.  She can hardly claim

ignorance.

And while it might be an expression of strategy to say, "I am going to give him

[the court or counsel] such a fucking hard time," it is hardly the kind of strategy this

court should protect.  As the district of New Jersey said in 1994 in *Ward v. Maritz, Inc.*

unethical conduct is not protected by the work product rule.[3]

Attorney Sacco's counsel also insists there is no reason to believe she did anything

consistent with this statement and therefore she shouldn't be punished for it.  Indeed

counsel tried to suggest that every statement Attorney Sacco made must be viewed in

isolation.  But this assumes rather too much.  This point might be well taken if counsel

or the court's concern was in fact punishing Attorney Sacco for each isolated remark.

Indeed, the court said so on the record at the hearing.  But this ignores the essence of

the problem: Attorney Sacco's conduct was part of a totality the effect of which was to

---

[2] 266 Conn. 747, 768-69.
[3] 156 F.R.D. 592, 594.

frustrate by petty objections, interruptions, and inappropriate behavior, a lawyer who is trying to question a witness. And plaintiff's brief amply illustrates how it kept the lawyer away from reasonable answers to reasonable questions.  Second, her profane pronouncement is consistent with how Attorney Sacco handled the proceedings before, during, and after the remark. Third, punishment is being considered here for the conduct, not the remark—which itself is only affirmation that her disruptions were intentional.  Fourth, the conduct is consistent, as we will see, with twenty years of sanctions by this court.

Courts, including this one, are justifiably reluctant to sanction lawyers and seek alternatives whenever possible. The courts' reluctance to sanction attorneys makes the six sanctions against Attorney Madonna Sacco that we know of stand out all the more.

Attorney Sacco was first sanctioned by this court 21 years ago in *Hagbourne v. Campell*.  It was for the same deposition conduct at issue here:  "prolix objections and improper interruptions." The court ordered Attorney Sacco to pay attorney's fees to the plaintiff attributable to the time wasted at the deposition because of the improper objections and frequent interruptions.[4]

Attorney Sacco was next sanctioned in 2000 in *Babcock v. Bridgeport Hospital, Inc.*  Again, the sanction was for misconduct in a deposition, including suggesting

_____

[4] Superior Court, judicial district of Waterbury, Docket No. CV 96 0132593 (December 12, 1997, *Vertefeuille, J.*) (21 Conn. L. Rptr. 121).

answers to a client with the court holding she "improperly obstructed the deposition, imposed expense and delay, and warrant[ed] the imposition of sanctions."[5]

Attorney Sacco was sanctioned again in 2003 for deposition misconduct in *Viscount v. Berger*. Once again, Attorney Sacco was found to have injected inappropriate objections into the process and to have used improper speaking objections that disrupted the proceedings. She was required to pay for the proceedings.[6]

Undeterred, Attorney Sacco continued the offending deposition conduct in 2007 in *Shannehan v. Aranow*. There, she was found to have improperly and repeatedly disrupted the deposition with speaking objections and impermissible witness instructions. The court found her behavior toward opposing counsel was "inappropriate, undignified, and degrading to the process." The court ordered her client to pay for the renewed deposition.[7]

Two years later in 2009, she was still doing the same thing.  In that year, Attorney Sacco's behavior was catalogued and considered in a thoughtful opinion by Judge Robert Shapiro.  Judge Shapiro found that Attorney Sacco's obstructive

---

[5] Superior Court, complex litigation docket at Waterbury, Docket No.X01 CV 98 0150693 (November 15, 2000, *Hodgson, J.*).
[6] Superior Court, judicial district of Ansonia-Milford, Docket No. CV 01 0074852.(December 1, 2003, *Robinson,J.*).
[7] Superior Court, complex litigation docket at Waterbury, Docket No. X06 CV 03 0183642 (May 18, 2007, *Stevens, J.*).

deposition conduct was "intentional, and not inadvertent" and that the "absence of significant sanctions would prejudice the plaintiffs . . . ."[8]  The court imposed financial sanctions and warned that they may not be enough in the future, discussing possible disqualification and noting that "[i]ncurring sanctions awards should not become a cost of doing business."[9]

Finally, in 2014, the court despaired of deterring Attorney Sacco's misconduct merely by financial sanctions.  It took up the matter of harsher measures after Attorney Sacco was presented to the Superior Court for her deposition misconduct by the state's chief disciplinary counsel.  The court required Attorney Sacco to submit to a one-year period of monitoring by another attorney.  Attorney Sacco was required to provide the attorney with a copy of all deposition transcripts or videotaped depositions in which she had participated commencing with the court's order. The monitoring attorney was to review the transcripts and/or video recordings of depositions, decide whether they contained abuses and inform the court of any misconduct.[10]  At the time of the deposition dispute in this case, Attorney Sacco had been free of a monitor for around two years.

---

[8]Superior Court, complex litigation docket at Hartford, Docket No. X04 CV 5015994 (July 10, 2008, *Shapiro, J.*).
[9] *Id.*
[10] *Chief Disciplinary Counsel v. Sacco*, Superior Court, judicial district of Fairfield, Docket No. CV 14 6045132 (September 22, 2014, *Bellis, J.*).

After 20 years of failed efforts, the court must consider for the sake of the profession it supervises what to do given Attorney Sacco's latest misconduct.  After six prior sanctions and at least eight warnings in this case it is not as if alternatives haven't been tried and incremental sanctions imposed. The court finds by clear and convincing evidence that Attorney Madonna Sacco has engaged in serious misconduct. And there is ample authority to deter further misconduct by more substantial methods.

For discovery abuse, Practice Book § 13-14 empowers the court to "make such order as the ends of justice require," including costs and fees and other relief. General Statutes § 51-84 says that courts may fine attorneys, suspend them or discipline them for good cause. Practice Book § 1-25 similarly gives courts broad powers to impose sanctions for "[w]illful or repeated failure to comply with rules or orders of the court . . . ." Practice Book § 2-44 grants the courts authority to suspend or disbar attorneys "for just cause."  Finally, as the Supreme Court recognized in 2001 in *Millbrook Owners Assn., Inc. v. Hamilton Standard,* courts have "the inherent power to provide for the imposition of reasonable sanctions, to compel the observance of its rules."[11]

So the court's job is to craft a sanction reasonable to fit the circumstances. Plainly, neither the five monetary sanctions, nor court monitoring, nor Judge

---

[11] 257 Conn. 1, 9-10.

Shapiro's threat of disqualification has had any appreciable deterrent effect on this attorney's misconduct.   It would appear only an interruption of the misconduct that has permeated Attorney Sacco's practice and the prospect that continued misconduct might end that practice may be sufficient to deter future misdeeds.

As the court in *Millbrook* held, it isn't fair to punish attorneys who don't know what they have done wrong and haven't been given fair warning by court order to stop.[12]   Here, Attorney Sacco has known of her own misconduct for over 20 years. She has fought with opposing counsel, interrupted their questions, peppered depositions with objections designed primarily to disrupt them, raised frivolous claims about testimony and now she has done the same thing in front of the court. She was warned about this same pattern of misconduct some eight times in these proceedings.  She has been found in the past and has declared openly and obscenely in this case that her violations are intentional attempts to disrupt the orderly course of justice in depositions.  There can hardly be a clearer case of a party who knows what not to do but has done it anyway even after being repeatedly and distinctly ordered not to do it.

On August 20, 2018, this court granted Attorney Sacco an almost five-hour hearing on the motion for sanctions and the court's own show-cause order entered on July 25, 2018. The parties extensively briefed the matter. They had copies of the

---

[12] 257 Conn. at 17-18.

transcripts at issue.  Attorney Sacco was represented at this lengthy hearing by able and experienced counsel. Her lawyer was repeatedly invited to put on whatever evidence his client desired but Attorney Sacco declined to testify.  Attorney Sacco has had due warning and due process.

While this means sanctions may be imposed, they must be proportional.  As the Supreme Court held in 2018 in *Ridgaway* v. *Mount Vernon Fire Insurance Co.,* judges must consider five factors in gauging the appropriate sanction:

- The nature of the conduct.

- The frequency of the conduct.

- Whether the attorney knew she faced potential sanctions.

- The availability of lesser sanctions.

- The party's participation or knowledge.[13]

Here, all five factors favor a significant sanction.  The conduct here was insulting to the parties and the court.  It detracted from the dignity of judicial proceedings and was the kind of behavior that tends to undermine respect for the litigation process, especially for the party who was its victim here but even for the

---

[13]  328 Conn. 60, 73.

defendant doctor who was likely suborned into participating in it.  Above all, it threatened to pervert the course of justice by preventing a party from receiving reasonable responses to reasonable deposition questions.

The frequency of the conduct at issue weighs heavily here.  A long-practicing attorney sanctioned six times over twenty years and warned at least eight times in these proceedings has persisted  in the same conduct— and even announced in a profane boast that the conduct was intentional and would continue.

This attorney certainly knew what was coming. At any point in the proceedings when told to cease her misconduct she could have simply stopped. Indeed, she did not stop when repeatedly ordered to and did not stop when specifically threatened by the court with contempt and sanctions.  In fact, it was the proceedings themselves that had to be stopped because Attorney Sacco's knowledge of potential sanctions did nothing to deter her and allow the deposition to proceed.

Repeated monetary sanctions have been tried. Court ordered monitoring of Attorney Sacco's practice has been imposed.  And having been discharged from representing the defendant in this case, the court cannot sanction Attorney Sacco by merely disqualifying her from this case.  This leaves the court only some more substantial sanction to choose.

16

And a more substantial sanction is especially justified by the fact that Attorney Sacco so clearly knew what was wrong.  Having been told by the courts repeatedly to stop the wrongdoing, instead of heeding them her ultimate response was indecent defiance:  "Fuck him. I am going to give him such a fucking hard time."

With lesser sanctions failing and disqualification unavailable, the only sanction proportional under *Ridgaway* is suspension from practice.  As the Appellate Court recognized in 2016 in *Disciplinary Counsel v. Williams*, suspension is one of those sanctions the court has the inherent power to impose.[14]

To be proportionate and —the court can hope—effective, the suspension must be long enough to bite but not so long as to bury the attorney's practice.  In multi-year litigation like this one a few weeks absence is unlikely to be noticed by either lawyer or clients.  Instead, the suspension must be long enough to present the future prospect of exclusion from the legal profession while allowing Attorney Sacco a chance, at long last, reform.  Given that her behavior has persisted for twenty years, the practice will not likely go away with a short suspension.

Therefore, the court will impose upon Attorney Sacco a 120-day suspension from the practice of law together with the costs she has forced on the parties to these

---

[14] 166 Conn. App. 557, 570.

proceedings.  The court will consider reducing the suspension to 90-days upon application and satisfactory evidence that Attorney Sacco has received at least 20 hours of suitable counseling through sources recommended by the Connecticut Bar Association or a qualified physician. The purpose of this part of the ruling is to recognize that a change in litigation philosophy is likely the only way to prevent future problems.  If it fails to take hold—a very real possibility given the length and depth of the problem—the courts will face this moment again and Attorney Sacco may face far harsher consequences. She is being offered an opportunity to prevent this.

The suspension will begin within twenty-one days from the date of this order or the date which it takes final effect following any appeal, whichever is later.  During the twenty-one day grace period Attorney Sacco will inform her firm and clients in writing that the court has suspended her from the practice of law for misconduct and make such arrangements as may be necessary to minimize any prejudice to her clients. Once the suspension is in effect, she may not participate in performing any legal work for any client and must limit her non-legal activities regarding clients to matters that might strictly be necessary to safeguard their interests.  Other than such activities—to guard against evasion of her suspension from practice— she may have no contact with clients or potential clients.  Attorney Sacco must also make the parties financially whole.  The parties are granted thirty days to file any claim for fees or expenses they

claim were incurred as a consequence of Attorney Sacco's misconduct. The court will then schedule a hearing on whether the claims are reasonable.

The plaintiffs also seek sanctions against the defendant doctor whose deposition answers were plainly evasive and —the court hopes—the product of bad legal advice. The court invites her with the advice of new counsel to ask opposing counsel to reconvene at her sole expense the twice aborted deposition that is the center of this dispute. If Kesselman fairly answers questions at the reconvened deposition, no further sanction will be considered beyond paying the legal fees and other expenses associated with the renewed deposition.  If she complies, the court will not allow her prior evasions to be used for impeachment at trial.  If she chooses not to submit to further deposition within thirty days of this order, the court will upon motion from plaintiffs' counsel craft an appropriate alternative sanction, including a likely holding that some part of the plaintiffs' case will be deemed established.

The court is aware of the frustration that plaintiff's counsel will doubtless feel about giving the witness another chance.  Kesselman must have known the game she was playing and clients can't typically hide behind their lawyers when they themselves violate the rules. But there is a significant possibility here that the defendant's failings have been in large part because of our failings—those of the legal profession, a public institution whose credibility is at stake here.  Besides, *Ridgaway* suggests it is

appropriate for a court in setting a sanction to decide if a matter is mostly the lawyer or mostly the client's fault—and here the court infers that the matter is mostly the lawyer's fault.[15]  Punishing this defendant witness without another chance is also likely unfair here given that she now swears that Attorney Sacco never told her she had been disclosed as an expert and her expert disclosure has been withdrawn.  This likely colored her response to some of the questions posed and may even eliminate the need for some of them to be asked again.

Attorney Madonna Sacco is suspended from the practice of law for 120 days under the terms listed above.  The plaintiffs' motion for sanctions against the defendant Kesselman is denied without prejudice to its renewal on the terms described in this memorandum.

BY THE COURT

Moukawsher, J.

---

[15] 320 Conn. at 75.

NO. (X07) HHD-CV-15-6075511     :     **SUPERIOR COURT**

**MEGAN CORONA, ET AL**     :     **JD HARTFORD (CLD)**

**V.**     :     **AT HARTFORD**

**DAY KIMBALL HEALTHCARE, INC., ET AL**   :     **OCTOBER 3, 2018**

## RESPONDENT'S NOTICE OF COMPLIANCE, MOTION FOR MODIFICATION OF ORDER AND REQUEST FOR EXTENSION OF TIME

This motion addresses the court's Memorandum of Decision on plaintiff's Motion for Sanctions (#341.00) and orders contained therein. For the reasons articulated below and in the attached affidavit, the Respondent requests the following relief.

By way of background, the Respondent is currently undergoing extensive medical treatment for a very serious oral cancer. This life-threatening malignancy has required her to undergo widespread head and neck surgery for the resection of cancerous bone and soft tissue along with debilitating radiation treatment. These recently completed procedures have left her with the need for significant reconstructive procedures, which are ongoing. Currently, the Respondent has reconstruction surgery scheduled for October 17, 2018. In addition, the Respondent is undergoing daily, 6-week treatments to deal with the consequences of her cancer treatment including daily, 2-hour sessions of hyperbaric oxygen treatment to mitigate the effects of radiation and phototherapy sessions 2 days per week to deal with other sequala of the disease. The underlying disease and the consequences of treatment have seriously debilitated her physically and psychologically.

COPY CERTIFIED

OCT 22 2018

JUDICIAL DISTRICT OF
HARTFORD
STATE OF CONNECTICUT

FILED

OCT - 4 2018

HARTFORD J.D.

(W0607272.1)

LAW OFFICES ● COONEY, SCULLY AND DOWLING

HARTFORD SQUARE NORTH ● 10 COLUMBUS BOULEVARD ● HARTFORD, CONNECTICUT 06106 ● (860) 527-1141 ● (860) 247-5215 fax ● JURIS NO. 10872

In addition, the severity of the sanctions imposed by the court has placed her in a position where it has become a practical impossibility for her to continue practicing law. Her relationship with her firm has ended along with all relationships she formerly had with the firm's clients. Planning for the remaining contingencies created by the court's order is complex on many levels. In a very short time, the Respondent will need to make difficult personal and professional decisions of the type that are ordinarily made over the course of many years. This is especially difficult under the medical circumstances described above.

In light of the foregoing, the Respondent first provides notice to the court that as of September 25, 2018, (1) she commenced the court-imposed 120-day suspension from practice, (2) she has fully notified her firm of the court's action, and (3) she has terminated relationships with all clients of her firm and has retained no personal clients.

In light of this, the Respondent requests the following relief and modification to the order (#341.00).

First, that the court's order (#341.00), be amended as follows:

    a. Respondent shall continue the suspension from practice that was commenced on September 25, 2018 until January 23, 2019 (120 days total) during which she will not perform any legal work for any client and not have contact with any clients or potential clients (except those health care providers who may be actively involved in her personal medical care);

    b. The Plaintiff will have 30 days from the date of the order (#341.00) to file a bill of costs, in which event the Respondent shall have 10 days within which to file any objections;

    c. Respondent's time to appeal or request further action or relief is extended to November 10, 2018.

LAW OFFICES ● COONEY, SCULLY AND DOWLING

HARTFORD SQUARE NORTH ● 10 COLUMBUS BOULEVARD ● HARTFORD, CONNECTICUT 06106 ● (860) 527-1141 ● (860) 247-5215 fax ● JURIS NO. 10872

This requested relief is essential for the Respondent to be able to make informed decisions and prepare both personally and professionally for the consequences attendant to the court's orders.

COUNSEL   FOR   RESPONDENT,   MADONNA SACCO, ESQ.,

BY: /s/ Eugene A. Cooney – Juris No. 300968

Eugene A. Cooney
Cooney, Scully and Dowling
Hartford Square North
10 Columbus Boulevard
Hartford, Connecticut 06106
860-527-1141/Juris No. 10872

LAW OFFICES • COONEY, SCULLY AND DOWLING

HARTFORD SQUARE NORTH • 10 COLUMBUS BOULEVARD • HARTFORD, CONNECTICUT 06106 • (860) 527-1141 • (860) 527-5215 fax • JURIS NO. 10872

NO. (X07) HHD-CV-15-6075511      :      **SUPERIOR COURT**

MEGAN CORONA, ET AL      :      **JD HARTFORD (CLD)**

V.      :      **AT HARTFORD**

DAY KIMBALL HEALTHCARE, INC., ET AL   :      **SEPTEMBER 25, 2018**

## RESPONDENT'S AFFIDAVIT IN SUPPORT OF MOTION
## FOR EXTENSION OF TIME AND MODIFICATION OF ORDER

The undersigned, being duly sworn, hereby deposes and says:

1. My name is Madonna A. Sacco, I am over 18 years of age and I understand the obligation of an oath.
2. I am the Respondent in this action.
3. I make this affidavit in support of my request for an extension of time and modification of the court's order of September 20, 2018 suspending me from the practice of law and imposing other sanctions.
4. In the short period since the court issued its order, that order has already had far-reaching effects that may make it impossible for me to continue the practice of law in any meaningful way. Therefore I have resigned from my firm as of September 26, 2018.
5. Under even ideal circumstances, it would be a hardship for me to make these necessary decisions in 21 days. Under my current medical circumstances, it is an extraordinary hardship. I am currently under extensive medical treatment for a serious head and neck cancer that required widespread resection of facial bones and soft tissues. I underwent multiple surgeries and radiation for this cancer, which left me debilitated on many levels. In addition to widespread resection, I had serious radiotherapy-induced side-effects of my oral mucosa, salivary glands, bone, teeth, and musculature. Treatment of the cancer and the orofacial complications that came with the cancer treatments required and continue to require consultations with numerous health care providers, including, head and neck surgeons, radiation oncologists, plastic and reconstructive surgeons, dentists and prosthodontists, physical therapists, and psychologists. Currently, I have reconstruction surgery scheduled on October 17, 2018 and I am undergoing a 6-week course of daily, 2-hour hyperbaric oxygen chamber treatments to ameliorate the side-effects of radiation. I am also currently undergoing biweekly phototherapy treatments to deal with other complications of the disease. I am also under ongoing surveillance for recurrence of breast cancer from which I have apparently recovered.

Madonna A. Sacco

Subscribed and sworn to before me this 3rd day of October 2018.

Commissioner of the Superior Court

COUNSEL FOR MADONNA SACCO, ESQ.,

BY: /s/ Eugene A. Cooney — Juris No.
           Eugene A. Cooney
           Cooney, Scully and Dowling
           Hartford Square North
           10 Columbus Boulevard
           Hartford, Connecticut 06106
           860-527-1141/Juris No. 10872

LAW OFFICES • COONEY, SCULLY AND DOWLING • HARTFORD SQUARE NORTH • 10 COLUMBUS BOULEVARD • HARTFORD, CONNECTICUT 06106 • (860) 527-1141 • (860) 247-5215 fax • JURIS NO. 10872

# CERTIFICATION

I hereby certify that a copy of the above was emailed on October 3, 2018 to all counsel

and pro se parties of record:

| | |
|---|---|
| Angelo Ziotas, Esq.<br>Silver, Golub & Teitell<br>184 Atlantic Street<br>Samford, CT 06901<br>aziotas@sgtlaw.com<br>For the Plaintiff | Nancy A. DeRose, Esq.<br>Danaher Lagnese, PC<br>21 Oak Street<br>Hartford, CT 06106<br>nderose@danaherlagnese.com<br>For Defendant Steven T. Raheb, M.D. |
| Isabel Del Vecchio, Esq.<br>Stephen Maxwell Reck, Esq<br>391 Norwich-Westerly Road<br>P.O. Box 431<br>North Stonington, CT 06359<br>isabel.delvecchio@gmail.com<br>attorneyreck@yahoo.com<br>For the Plaintiff | Andrew S. Kaufman, Esq.<br>Megan E. Bryson, Esq.<br>Kaufman Borgeest & Ryan LLP<br>1010 Washington Boulevard<br>Stamford, Connecticut 06901<br>akaufman@kbrlaw.com<br>mbryson@kbrlaw.com<br>For Defendant, Erica J. Kesselman, MD |
| Michael G. Rigg, Esq.<br>Janine W. Hodgson, Esq.<br>O'Brien Tanski & Young, LLP<br>500 Enterprise Drive, Suite 4B<br>Rocky Hill, CT 06067<br>mgr@otylaw.com<br>jwh@otylaw.com<br>For Defendant Day Kimball Healthcare, Inc. | Statewide Grievance Committee<br>287 Main St<br>East Hartford, CT 06118 |
| Office of Chief Disciplinary Counsel<br>100 Washington Street<br>Hartford, CT 06106 | |

/s/ Eugene A. Cooney – Juris No. 300968
Eugene A. Cooney